Filed 10/21/22 In re G.M. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re G.M. et al., Persons Coming Under the Juvenile Court Law. | D080052 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. Nos. J520167A-B) |
| Plaintiff and Respondent, | |
| v. | |
| J.M. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, Michael P. Pulos, Judge. Conditionally reversed and remanded with directions.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant J.M., Father.

Suzanne M. Davidson, under appointment by the Court of Appeal, for Defendant and Appellant S.O.P., Mother.

Claudia Silva, Acting County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Eliza Molk, Deputy County Counsel, for Plaintiff and Respondent.

J.M. (Father) and S.O.P. (Mother) appeal the juvenile court's order terminating their parental rights over their daughters G.M. and K.O. (collectively referred to as the children) pursuant to Welfare and Institutions Code section 366.26.[1] The only issue Father raises on appeal is that the San Diego County Health and Human Services Agency (Agency) did not comply with its initial inquiry duties under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and section 224.2 because the Agency failed to conduct an ICWA inquiry of available extended family members and failed to "make meaningful efforts to locate and interview all biological relatives of Father and Mother" who qualify as extended family members. Mother joins in Father's arguments. The Agency concedes it failed to conduct an ICWA inquiry of available extended family members. The Agency argues the juvenile court's order should nonetheless be affirmed under the hybrid standard of review set forth in *In re Ezequiel G.* (2022) 81 Cal.App.5th 984 (*Ezequiel*) because substantial evidence supports the juvenile court's finding that there was no reason to know the children were Indian children and the juvenile court was within its discretion in finding that the Agency conducted an adequate ICWA inquiry. Alternatively, the Agency argues any error in failing to conduct an ICWA inquiry of the children's available extended family members was harmless under *In re Dezi C.* (2022) 79 Cal.App.5th 769, review granted September 21, 2022, S275578 (*Dezi C.*).

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

We conclude the Agency violated ICWA and section 224.2 when it failed to conduct an ICWA inquiry of extended family members with whom the Agency was in contact. The Agency was not, however, required to seek to contact "all biological relatives of Father and Mother." We decline to affirm the juvenile court's order under *Ezequiel* because in the order on appeal here, the juvenile court found that ICWA did not apply to the proceedings, and substantial evidence does not support that finding. Finally, we conclude the Agency's error was prejudicial under *In re Benjamin M.* (2021) 70 Cal.App.5th 735 (*Benjamin M.*). As such, we conditionally reverse and remand for the limited purpose of ensuring compliance with ICWA and section 224.2.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

The Agency initiated this dependency proceeding under section 300 subdivision (b) on behalf of G.M. and K.O. in October 2019, alleging the children had suffered or there was a substantial risk the children would suffer serious physical harm or illness based on Mother's and Father's failure or inability to provide adequate supervision or protection. The Agency alleged that in September 2020, the children were exposed to a violent confrontation between Mother and Father and that for the past three years, Mother and Father had engaged in ongoing domestic violence. The Agency further alleged that prior attempts to safety plan with the family had been unsuccessful, Father had threatened to take the children to Florida during an open investigation, and Mother's and Father's ongoing physical violence place the children at substantial risk of serious physical harm.

---

[2] In light of the limited scope of this appeal, we provide an abbreviated summary of the dependency proceedings focused on the facts relevant to the issues on appeal.

3

The petition stated the Agency asked Mother and Father about the children's Indian status and they both denied that the children have any Indian ancestry. Mother completed an ICWA-020 Parental Notification of Indian Status form (ICWA-020 form) on October 11, 2019, indicating that she has no Indian ancestry. In its October 11, 2019 detention report, the Agency reported that Mother was interviewed on October 2, 2019 and Father was interviewed on October 3, 2019, and they both denied that the children have any Indian ancestry.

The Agency reported that the children were currently living in Mother's home and Father lived elsewhere. The Agency interviewed maternal aunt G.O., who stated that maternal grandmother lived in the home with Mother. The Agency also interviewed maternal grandmother. The Agency's report did not state that it asked the maternal aunt G.O. or maternal grandmother about the children's potential Indian ancestry.

The Agency reported interviewing Father, who stated he had spoken with paternal grandmother, who lives in Florida. He claimed he was considering taking the children to Florida to be cared for by paternal grandmother. The Agency advised Father not to take the children during the investigation.

At the detention hearing, the court made a prima facie finding that the children came within section 300, subdivision (b)(1), and ordered the children detained.

In its November 5, 2019 jurisdiction and disposition report, the Agency reported that Mother again denied Indian ancestry on October 14, 2019. The Agency also reported that the children were detained at Polinsky Children's Center. Mother identified maternal grandmother as her preferred

4

permanent placement plan. She stated that her father, maternal grandfather was deceased.

The Agency reported that Father stated he was adopted at the age of seven and he has a good relationship with his adoptive mother. He indicated he has 10 siblings, but denied having a relationship with his siblings or his biological mother. Father completed an ICWA-020 form on November 5, 2019, indicating that he has no Indian ancestry.

At the November 5, 2019 hearing, the court found that ICWA does not apply to the proceedings. The court set a contested adjudication and disposition hearing for February 4, 2020.

In a December 9, 2019 addendum report, the Agency reported that maternal grandmother's home was being evaluated for placement.

At the contested adjudication and disposition hearing on February 4, 2020, the Agency reported that the children were with maternal grandmother. The court made true findings on the allegations in the petitions, found that the children were persons described within section 300, subdivision (b), declared the children dependents, and removed the children from Mother's and Father's custody. The court found that for both children "[n]otice pursuant to the Indian Child Welfare Act is not required because the court has reason to know the child is not an Indian child. Reasonable inquiry has been made to determine whether the child is or may be an Indian child."

In its August 3, 2020 status review report, the Agency reported that the children had been placed with maternal grandmother since January 31, 2020, and maternal grandmother was willing to adopt the children if they did not reunify with Mother or Father. The Agency reported that on July 8, 2020, Mother informed the Agency that she was "couch surfing" and sometimes stayed with her cousin and other times stayed in a hotel.

5

At the six-month review hearing on November 17, 2020, the court ordered that reunification services be terminated and set a section 366.26 hearing to select a permanent plan for the children. The court again found that for both children "[n]otice pursuant to the Indian Child Welfare Act is not required because the court has reason to know the child is not an Indian child. Reasonable inquiry and the continuing duty to inquire per [Welfare and Institutions Code section] 224.3 has been made to determine whether the child is or may be an Indian child."

At the contested section 366.26 hearing on February 9, 2022, the court found that the children were adoptable because maternal grandmother wanted to adopt them, was capable and able to do so, and was already approved. The court found by clear and convincing evidence that it was in the best interests of the children to be adopted and terminated Mother's and Father's parental rights over the children. In its written orders for both children, the court found "without prejudice that the Indian Child Welfare Act does not apply to this proceeding."

DISCUSSION

Father argues the Agency failed to satisfy its initial inquiry obligations under ICWA and section 224.2. The Agency concedes it failed to conduct an ICWA inquiry of available extended family members but argues the juvenile court's order terminating Father's and Mother's parental rights should nonetheless be affirmed.

A. Applicable Law

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*).) Under California law adopted pursuant to ICWA, the juvenile court and the

6

Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a); see *Isaiah W.*, at p. 9.) An "Indian child" is defined under California law in the same manner as under federal law, i.e., as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" (25 U.S.C. § 1903(4); accord, Welf. & Inst. Code, § 224.1, subd. (a) [adopting the federal definition].)

As outlined by this court in *In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*), "section 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply."

"On appeal, we review the juvenile court's ICWA findings for substantial evidence." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1051.) However, where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied. (*Ibid*.)

### B. ICWA Inquiry Duties

Father argues the Agency failed to comply with its initial inquiry duties under ICWA and section 224.2 because it failed to conduct an ICWA inquiry of available extended family members and failed to "make

7

meaningful efforts to locate and interview all biological relatives of Father and Mother" who qualify as extended family members. The Agency concedes it failed to conduct an ICWA inquiry of available extended family members.

During the first stage of initial inquiry, "[s]ection 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department, such as the Agency, the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' " (*D.S.*, *supra*, 46 Cal.App.5th at pp. 1048–1049.) ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of ICWA].)

Here, the Agency concedes it had contact with but did not conduct an ICWA inquiry of maternal grandmother, with whom the children were placed, as well as maternal aunt G.O.

Father argues the Agency also failed to conduct an ICWA inquiry of any biological paternal relatives, despite Father stating he has 10 siblings. We conclude the Agency did not have a duty to seek out Father's paternal relatives, including paternal grandmother and Father's 10 siblings, where the record does not reveal the Agency had any contact information for these individuals. The Agency is not required to "cast about" for information. (*D.S.*, *supra*, 46 Cal.App.5th at p. 1053.) Likewise, while Father does not

8

identify in his briefing any other maternal relatives that the Agency should have sought to contact, we conclude the Agency had no duty to do so where the record does not reveal the existence of, identity of, and/or contact information for any other maternal relatives who qualify as "extended family members" under ICWA.

Because the Agency failed to conduct an ICWA inquiry of available extended family members, maternal grandmother and maternal aunt G.O., the Agency failed to satisfy its initial inquiry obligation under section 224.2, subdivision (b).

### C. Appropriate Disposition

While the Agency concedes it failed to conduct an ICWA inquiry of available extended family members, the Agency argues the juvenile court's order should nonetheless be affirmed under the hybrid standard of review set forth in *Ezequiel.* The Agency asserts substantial evidence supports the juvenile court's finding that there was no reason to know the children were Indian children and the juvenile court was within its discretion in finding that the Agency conducted an adequate ICWA inquiry. Alternatively, the Agency argues any error in failing to conduct an ICWA inquiry of available extended family members was harmless under *Dezi C.*

In *Ezequiel,* the mother appealed the juvenile court's finding at the detention hearing that "it did not have reason to know that Ezequiel was an Indian child." (*Ezequiel, supra,* 81 Cal.App.5th at p. 997.) The Court of Appeal applied section 224.2, subdivision (i)(2), which provides:

> "*If the court makes a finding that* proper and adequate further inquiry and due diligence as required in this section have been conducted and *there is no reason to know whether the child is an Indian child*, the court may make a

9

finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence." (Italics added.)

The *Ezequiel* court then created "a hybrid substantial evidence/abuse of discretion standard, reviewing for substantial evidence whether there is reason to know a child is an Indian child, and for abuse of discretion a juvenile court's finding that an agency exercised due diligence and conducted a 'proper and adequate' ICWA inquiry." (*Ezequiel*, *supra*, 81 Cal.App.5th at pp. 995–996.)

The Agency urges this court to adopt this hybrid standard of review. We conclude section 224.2, subdivision (i)(2) is not applicable to the order and ICWA finding on appeal in this case. Here, in its termination order, the juvenile court found that ICWA does not apply to the proceedings. Substantial evidence does not support this finding because the Agency did not comply with its statutory obligations of initial inquiry under section 224.2, subdivision (b).[3] As discussed above, the Agency did not ask available known extended family members, maternal grandmother and maternal aunt G.O., about the children's potential Indian ancestry. Without this initial inquiry, we cannot know whether there is a "reason to know" the children are Indian children and we cannot reach section 224.2, subdivision (i). As such,

---

[3]    In previous orders, namely the February 4, 2020 contested adjudication and disposition order and the November 17, 2020 six-month review order, the juvenile court found that notice pursuant to ICWA was not required because the court had reason to know the children were not Indian children and reasonable inquiry had been made to determine whether the children were Indian children. However, here, a different finding is under review and the Agency has conceded that it did not comply with its initial inquiry obligations.

we cannot affirm based on the hybrid standard of review that *Ezequiel* created for section 224.2, subdivision (i)(2).[4]

The Agency also argues its error in failing to conduct an ICWA inquiry of maternal grandmother and maternal aunt G.O. was harmless. The Agency urges this court to adopt the harmless error standard set forth in *Dezi C.*, such that "[a]n agency's failure to discharge its statutory duty of initial inquiry is harmless unless the record contains information suggesting a reason to believe that the children at issue may be 'Indian child[ren],' in which case further inquiry may lead to a different ICWA finding by the juvenile court." (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 774.) In *In re Y.M.* (2022) 82 Cal.App.5th 901 (*In re Y.M.*), this court has already declined to adopt *Dezi C.*'s standard, and instead concluded that the standard set forth in *Benjamin M.* should be applied in determining the prejudicial effect of an agency's failure to comply with its section 224.2, subdivision (b) duty of initial inquiry. (*In re Y.M.*, at p. 915.) The *Benjamin M.* standard provides that reversal is appropriate where "the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)

Here, it is clear there was readily available information to be obtained from maternal grandmother and maternal aunt G.O. The fact that Father and Mother denied Indian ancestry at the outset of the proceedings does not relieve the Agency of its "broad duty" to inquire of these readily ascertainable

---

[4] We do not wish to delay permanency by ordering futile acts, however, we cannot affirm the juvenile court's finding that ICWA does not apply before the Agency complies with ICWA and related California law.

extended family members whether the children are an Indian children. (*In re Y.W.* (2021) 70 Cal.App.5th 542, 554.) A contrary rule would "ignore[ ] the reality that parents may not know their possible relationship with or connection to an Indian tribe." (*Id.* at p. 554.) As such, we conclude that an ICWA inquiry of maternal grandmother and maternal aunt was likely to bear meaningfully upon whether the children are Indian children, whatever the outcome of the inquiry may be. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744; see also *In re Ricky R.* (2022) 82 Cal.App.5th 671, 680 [applying *Benjamin M.* standard and finding reversible initial inquiry error where agency "asked the parents about Indian ancestry" but "failed to ask extended family members about it"].)

This case is distinguishable from *In re Y. M.* where this court found that the failure to conduct an ICWA inquiry of paternal grandfather and maternal grandmother was harmless error under the *Benjamin M.* standard. (*In re Y.M.*, *supra*, 82 Cal.App.5th at p. 918.) There, the appellant father lived with paternal grandmother during the dependency proceedings, and they had a good relationship. This court reasoned that given the father's "close and regular proximity to the paternal grandmother, we presume Father had a motive to ask, and could have easily asked, her about any possible Indian ancestry that may have afforded him additional rights or protection under ICWA." (*Id.* at p. 917.) Also, during the dependency proceedings, the paternal grandfather had sought placement of Y.M. and was being assessed for placement. (*Id.* at pp. 906–907.) However, Y.M. was instead placed with a nonrelative extended family member, who was eventually designated as Y.M.'s prospective adoptive parents. (*Ibid.*) This court reasoned that given the paternal grandfather's desire for Y.M. to be placed with him, "he presumably would have had a strong incentive to raise

12

any Indian ancestry in support of that goal, but he did not do so." (*Id.* at pp. 917–918.)

Here, although maternal grandmother may have lived in the family home with Mother at the beginning of the proceedings, unlike in *Y.M.,* Mother did not live with maternal grandmother or paternal aunt throughout the proceedings. Additionally, the children were initially placed with maternal grandmother and there is no indication in the record that placement with maternal grandmother was at risk. Therefore, maternal grandmother did have the same incentive as the paternal grandfather in *In re Y.M.* to raise any Indian ancestry.

The Agency argues this case is similar to *In re M.M.* (2022) 81 Cal.App.5th 61, review granted October 12, 2022, S276099 (*In re M.M.*), where both parents denied Indian ancestry, but the Agency failed to conduct an ICWA inquiry of paternal aunt with whom M.M.was placed, or maternal grandmother with whom the agency was in contact. (*In re M.M.*, at p. 69.) The Court of Appeal rejected the error per se standard of prejudice and concluded that the error was harmless under the other standards, including *Dezi C.* and *Benjamin M.*. (*Id.* at p. 72.) The court concluded that further inquiry was unlikely to bear meaningfully on M.M.'s Indian ancestry where "[n]o one has suggested there is any *reason to believe* M.M. might have Indian ancestry. M.M.'s parents certified they have no information M.M. may have Indian heritage, and no relative, not even paternal aunt with whom M.M. was placed, has provided *any information to suggest M.M. has Indian heritage.*" (*Ibid.*, italics added.) In our view, this is an application of the *Dezi C.* prejudice standard, which we have already rejected. (See *Dezi C.*, *supra*, 79 Cal.App.5th at p. 774 ["[a]n agency's failure to discharge its statutory duty of initial inquiry is harmless unless the record contains information

13

suggesting a *reason to believe* that the children at issue may be 'Indian child[ren],' in which case further inquiry may lead to a different ICWA finding by the juvenile court," italics added].)

Given the importance of expediency and need for finality, we encourage the parties to stipulate to immediate issuance of the remittitur in this case. (Cal. Rules of Court, rule 8.272(c)(1).)

## DISPOSITION

The juvenile court's order terminating parental rights is conditionally reversed and the matter is remanded to the juvenile court with directions that within 30 days of the remittitur, the Agency must file a report demonstrating its compliance with the inquiry provisions of ICWA and section 224.2, subdivision (b), including conducting an ICWA inquiry of maternal grandmother and maternal aunt G.O., and, if required, conduct further inquiry under section 224.2, subdivision (e). Within 45 days of the remittitur, the juvenile court must conduct a hearing to determine if the Agency's investigation satisfied its affirmative duty to investigate. The juvenile court has the discretion to adjust these time periods on a showing of good cause.

If after investigation neither the Agency nor the juvenile court has reason to believe or to know G.M. and K.O. are Indian children, the February 9, 2022 order shall be reinstated. Alternatively, if after completing the inquiry, the Agency or the juvenile court has reason to believe or to know G.M. and K.O. are Indian children, the juvenile court shall proceed in conformity with ICWA and related California law.

IRION, J.

WE CONCUR:

HUFFMAN, Acting P. J.

DO, J.